```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                     HOUSTON DIVISION


MID-CONTINENT CASUALTY          §
COMPANY,                        §
                                §
     Plaintiff,                 §
                                §
v.                              §   CIVIL ACTION NO. H-06-3451
                                §
HAMMONDS TECHNICAL SERVICES,    §
INCORPORATED,                   §
                                §
     Defendant.                 §
```

MEMORANDUM AND ORDER

Pending is Plaintiff Mid-Continent Casualty Company's Motion for Summary Judgment (Document No. 14). Defendant filed no response, and the motion is therefore deemed unopposed pursuant to Local Rule 7.4. After carefully considering the motion and the applicable law, the Court concludes as follows.

I. Background

Plaintiff Mid-Continent Casualty Company ("Plaintiff") brought this case for declaratory judgment that it has no duty to defend or indemnify Defendant Hammonds Technical Services, Incorporated, ("Defendant") in a products liability lawsuit filed in Illinois by Nancy Shaw ("Ms. Shaw"), styled Cause No. 05-L-773 ("Underlying

Suit").[1]   Ms. Shaw filed the Underlying Suit against about 50 parties, including Defendant, a manufacturer of fuel injectors and fuel pumps for the airline industry, for the wrongful death of her husband Francis N. Shaw ("the deceased" or "Decedent"). *See* Document No. 14, ex. A at 1.  The complaint in the Underlying Suit alleges that the deceased was an aircraft mechanic who worked for 27 years for various employers at Lambert International Airport in St. Louis, Missouri, including for Trans-World Airlines from 1986 to 2001 and for American Airlines from 2001 to 2003.  Id., ex. A at 3.  In 2003, he was diagnosed with Non-Hodgkin's Lymphoma and died in February, 2005.  Id.  It is alleged that the deceased was an ordinary user of benzene and benzene products during the course of his long employment at the airport in St. Louis, and elsewhere while engaged in non-occupational work projects (including, but not limited to, home and automotive repairs, maintenance and remodeling), that the numerous defendants' benzene products resulted in an unreasonably dangerous condition, and that his exposure to these products caused his fatal illness and death. Id., ex. A at 4.

The commercial general liability insurance policies and excess coverage policies issued by Plaintiff to Defendant were in effect

---

[1] The Underlying Suit is captioned: *Nancy Shaw, Individually and as Special Administrator of the Estate of Francis N. Shaw, Deceased v. Ashland, Inc. et al*. *See* Document No. 14, ex. A at 1. It was filed in the Third Judicial Circuit Court of Madison County, Illinois.  Id.

from July 18, 1996 to July 18, 1998.[2]  Id. at 3, 4, ex. B1 at MC0001.  After Ms. Shaw's suit was filed, Defendant sought defense and indemnity from Plaintiff under the insurance policies.  Id. at 3-4.

Both of the commercial general liability policies and both of the excess coverage policies exclude coverage for bodily injury included in the "products-completed operations hazard" exclusion. *See* Document No. 14, ex. B1 at MC0019, B2 at MC0065, B3 at MC0097, B4 at MC0131.  The policies define "products-completed operations hazard" as

> all "bodily injury" . . . occurring away from premises [Defendant] own[s] or rent[s] and arising out of "[Defendant's] product" or "[Defendant's] work" except:
>     (1) Products that are still in [Defendant's] physical possession; or
>     (2) Work that has not yet been completed or abandoned.
>
> []"[Defendant's] work" will be deemed completed at the earliest of the following times:
>         (1) When all of the work called for in [Defendant's] contract has been completed.
>         (2) When all of the work to be done at the site has been completed if [Defendant's] contract calls for work at more than one site.
>         (3) When that part of the work done at a job site has been put to its intended use by any person

---

[2] The policies at issue are: CGL-221374 and XS-103555, the commercial general liability insurance policy and excess coverage policy, respectively, effective from July 18, 1996 to July 18, 1997; and CGL-236255 and XS-104484, the commercial general liability insurance policy and excess coverage policy, respectively, effective from July 18, 1997 to July 18, 1998.  *See* id., ex. B1-B4.

>>or organization other than another contractor or subcontractor working on the same project.
>
>Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Id., ex. B1 at MC0032-33; *see also* id., ex. B2 at MC0057, B3 at MC0093, B4 at MC0124 (using substantially similar language in the other three policies to define "products-completed operations hazard"). In other words, bodily injuries occurring away from Defendant's premises, or arising out of completed products no longer controlled by Defendant, are not covered under these policies. *See* id. According to the policies, Defendant's premises were located in Houston, Texas. *See* id., ex. B1 at MC0039, ex. B3 at MC0080.

Additionally, the insurance policies exclude coverage for bodily injuries expected or intended from the standpoint of the insured, *see* id., ex. B1 at MC0022, B2 at MC0043, B3 at MC0083, B4 at MC0110; and bodily injury occurring outside the policy period, *see* Document No. 14, ex. B1 at MC0022, ex. B2 at MC0042, B3 at MC0083, B4 at 0109.

Plaintiff contends its policies provide no coverage and it has no duty to defend for the Underlying Suit because: (1) the claims are excluded by the products-completed operations hazard exclusions; (2) the claims are excluded by the expected or intended

4

injury exclusions; and (3) the deceased's illness did not occur until after the policy periods expired.  *See* Document No. 15.

## II.  Standards of Review

A.  Summary Judgment Standard

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted.  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive

evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986).  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351).  "If, on the other hand, the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  Anderson, 106 S. Ct. at 2513.

A motion for summary judgment cannot, of course, be granted simply because there is no opposition.  Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n.3 (5th Cir. 1995).  When no response is filed, however, the Court may accept as undisputed the facts set forth in support of the motion and grant summary judgment when a prima facie showing for entitlement to judgment is made.  *See* Eversley v. Mbank Dallas, 843 F.2d 172, 174 (5th Cir. 1988); Rayha v. United Parcel Serv., Inc., 940 F. Supp. 1066, 1068 (S.D. Tex. 1996).

B.   Legal Standards Governing the Duty to Defend

"Under Texas law, an insurer may have a duty to defend a lawsuit against its insured."[3] Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 552 (5th Cir. 2004). Texas courts employ an "eight corners" or "complaint allegation" rule in determining whether an insurer has a duty to defend. *See* id.; Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 528 (5th Cir. 2004) (citing King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002)); *see also* GuideOne Elite Ins. Co. v. Fielder Road Baptist Church, 197 S.W.3d 305, 308-09 (Tex. 2006). "This rule 'requires the trier of fact to examine only the allegations in the [underlying] complaint and the insurance policy in determining whether a duty to defend exists.'" Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co., 99 F.3d 695, 701 (5th Cir. 1996) (quoting Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp., 1 F.3d 365, 369 (5th Cir. 1993)); *see also* Guideone, 197 S.W.3d at 308 (explaining the eight corners rule).

---

[3] Texas law governs this dispute. *See* Klumpe v. IBP, Inc., 309 F.3d 279, 281 (5th Cir. 2002) ("In diversity cases, we apply state substantive law together with the federal rules of procedure." (footnote omitted)); *see also* TEX. INS. CODE ANN. art. 21.42 (Vernon 2006) ("Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company . . . shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby . . . .").

7

"Thus, the duty to defend arises only when the facts alleged in the complaint, if taken as true, would *potentially* state a cause of action falling within the terms of the policy." Northfield, 363 F.3d at 528. "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997)). An insurer can absolve itself of the duty to defend by showing, within the confines of the eight corners rule, "that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of *all* claims." Northfield, 363 F.3d at 528.

The focus of the inquiry is on the alleged facts, not on the asserted legal theories. St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex., 249 F.3d 389, 392 (5th Cir. 2001). "Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination[,] and allegations against the insured are liberally construed in favor of coverage." GuideOne, 197 S.W.3d at 308 (citing Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 939 S.W.2d at 141). Additionally, a court may not attempt to "imagine factual scenarios which *might* trigger coverage." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 939 S.W.2d at 142 (emphasis added).

III. <u>Discussion</u>

Plaintiff contends that the injuries alleged in the Underlying Suit were caused away from Defendant's premises or by exposure to completed fuel injectors and fuel pumps, thus bringing the injuries under the products-completed operations hazard exclusions from coverage under Defendant's policies. *See* Document No. 14 at 10-14.

The policies state, in similar language, that Defendant does not have coverage for bodily harm included within the "products-completed operations hazard" exclusion. *See* <u>id.</u>, ex. B1 at MC0019, B2 at MC0065, B3 at MC0097, B4 at MC0131. The policies define a "products-completed operations hazard" to include all bodily injury occurring away from the premises owned or leased by Defendant and arising out of Defendant's completed products unless the products remain in Defendant's physical possession or have not yet been completed. *See* <u>id.</u>, ex. B1 at MC0032, B2 at MC0057, B3 at MC0093, B4 at MC0124; *see also* <u>supra</u> Section I (quoting the language of the policies defining "products-completed operations hazard"). Thus, injuries from completed products and off-premises injuries are excluded under Defendant's policies. <u>Id.</u> Moreover, the policies treat products that require service, but are otherwise complete--like fuel injectors or fuel filters on airplanes--as complete, and therefore outside coverage as well. <u>Id.</u>

The Underlying Suit makes no allegation that the deceased ever came onto Defendant's premises in Houston, Texas. In fact, the

injuries are alleged to have occurred at distant locations, where the deceased worked at Lambert International Airport in St. Louis, Missouri, and in non-occupational projects such as home and automotive projects. Id., ex. A at 3-4. Never is it alleged that any of this occurred on or even near Defendant's premises in Houston, Texas.

The Underlying Suit also fails to allege that any unfinished fuel injectors or fuel pumps of Defendant contributed to the deceased's illness and subsequent death. The policies require injuries from products to arise from either uncompleted products or products still under the control of Defendant--neither of which is alleged in the underlying complaint. Additionally, the policies expressly treat items requiring maintenance, such as fuel injectors or fuel pumps encountered by airplane mechanics, as completed products not subject to coverage.

In sum, the Underlying Suit fails to allege bodily harms to the deceased that occurred either on the premises of Defendant, or as the result of a non-completed fuel injector or fuel pump. The "products-completed operation hazards" exclusions therefore apply. Applying the eight corners rule, the policies issued by Plaintiff to Defendant do not cover the harms alleged in the Underlying Suit. See LaBatt Co. v. Hartford Lloyd's Ins. Co., 776 S.W.2d 795, 798-800 (Tex. App.--Corpus Christi 1989) (holding that a similar

products-complete hazard exclusion negated the insurers duty to defend).

## C. Duty to Indemnify

Plaintiff further seeks a declaration that it has no duty to indemnify Defendant.  Although Texas law generally considers that issue justiciable only *after* the underlying action has been concluded, there is an exception where, as here, "'*the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*.'" Northfield, 363 F.3d at 536 (quoting Farmers Tex. County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 84 (Tex. 1997)).

## IV. Order

For the reasons set forth, it is hereby

ORDERED that Plaintiff Mid-Continent Casualty Company's Motion for Summary Judgment (Document No. 13) is GRANTED, and it is ORDERED and ADJUDGED that:

1.  Mid-Continent Casualty Company does not owe Hammonds Technical Services, Inc., defense, indemnity or coverage under the policies above for claims in the Underlying Suit because such claims are excluded by the products-completed operations hazard exclusions;

2.  Mid-Continent Casualty Company is not obligated or liable to Hammonds Technical Services, Inc., in connection with any judgment or settlement which may be entered in the Underlying Suit; and

3. Mid-Continent Casualty Company is not obligated to pay any costs taxed upon Hammonds Technical Services, Inc., in the Underlying Suit, nor to pay on behalf of Hammonds Technical Services, Inc., any sum that Hammonds Technical Services, Inc., shall become legally obligated to pay as damages because of or attendant to the Underlying Suit.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this <u>27th</u> day of November, 2007.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE